On Application for Rehearing

MOORE, Judge.
This court’s opinion of November 30, 2012, is withdrawn, and the following is substituted therefor.
The Huntsville City Board of Education (“the HCBOE”) appeals from a hearing officer’s decision reversing the HCBOE’s action terminating the employment of Ann Frasier, Jodie Lindstrom, Johnna Lamelle, Rene Robinson, Deborah Hatton, Bryant Benson, Anthony McCurdy, Freeman Milton, Tracy Powell, Anthony Crutcher, Garrison Friend, Patty Smith, David Yarbor-ough, Carl Ford, Harvey Fisher, Jimmy Cobble, and Steve Berryhill (hereinafter referred to collectively as “the appellees”).

Procedural Background

On April 25, 2011, Dr. Ann Moore, who was at that time the superintendent of the HCBOE, gave notice to each of the appel-lees and to the HCBOE of her intent to recommend the termination of their services due to a “justifiable decrease in jobs in the system or other good and just causes.” The notices further stated, in pertinent part:
“Due to financial circumstances, the [HCBOE] must reduce the number of its employees. To accomplish this, the [HCBOE] has adopted a Reduction in Force Plan. The selection of the employees to be terminated is based upon the job classifications affected by the Reduction in Force Plan and years of service within the Huntsville School System (those with fewer years of service in each specifically identified area to be terminated before those with greater seniority).”
In response to Dr. Moore’s notices, the appellees contested their proposed terminations, as was their right under former § .36-26-102, Ala.Code 1975, a part of the former Fair Dismissal Act (“the FDA”), former § 36-26-100 et seq., Ala.Code 1975.[1] Pursuant to conferences held by *196 the HCBOE on May 17 and 18, 2011, the HCBOE voted to approve the recommended terminations. Each of the appel-lees contested the HCBOE’s decision in a consolidated hearing on October 24 and 25, 2011. On January 26, 2012, the hearing officer entered a decision reversing the HCBOE’s decision, concluding that no action should be taken against the appellees.
On February 3, 2012, the HCBOE filed a notice of appeal from the hearing officer’s decision. After concluding that the HCBOE presented “special and important reasons” for the appeal, see former § 36-26-104(b), Ala.Code 1975, this court accepted the appeal on June 19, 2012.

Evidentiary and Statutory Background

In 2006, the Alabama Legislature passed the School Fiscal Accountability Act (“the SFAA”). See § 16-13A-1 et seq., Ala. Code 1975. The SFAA mandates that all local boards of education adopt, and operate under, sound fiscal-management policies, § 16-13A-1, including establishing and maintaining a reserve fund equal to one month’s operating expenses. § 16-13A-9, Ala.Code 1975. To assure compliance, the SFAA provides for the appointment of local financial officers to verify and report on the financial transactions of each board of education. § 16-13A-4, Aia. Code 1975. The various financial reports are collected and analyzed by the Chief Financial Officer (“CFO”) of the State Board of Education. § 16-13A-2, Ala. Code 1975. If, upon analysis of the financial reports, it is determined that a local board of education is operating in a fiscally unsound manner, the CFO must provide assistance to restore the financial integrity of that local board of education. Id. In some cases, the CFO can recommend to the Superintendent of the State Board of Education (“the State Superintendent”) that he or she appoint a person to provide on-site continuous advice on day-to-day financial operations. Rule 290-4-1-.01, Ala. Admin. Code (State Bd. of Educ.). In extreme cases, when such continuous assistance does not remedy the situation, the State Board of Education, upon the recommendation of the CFO and the State Superintendent, may authorize the State Superintendent to assume direct control of the finances of a local board. Rule 290-4-1 — .01(d), Ala. Admin. Code (State Bd. of Educ.).
After the enactment of the SFAA, Dr. Warren Craig Pouncey assumed the duties of the CFO. Dr. Pouncey testified that the HCBOE was almost immediately placed under watch for its financial practices. On November 30, 2007, Dr. Pouncey wrote Dr. Moore a letter advising her that the HCBOE should take corrective measures in order to avoid further deteriorating finances. Despite that warning, by 2010, the HCBOE’s financial records showed that it had incurred financial obligations exceeding its ability to pay by approximately $20 million and that the HCBOE had not maintained a reserve fund of approximately $16 million as required by § 16-13A-9. Dr. Pouncey issued a report to the HCBOE in December 2010 indicating that the HCBOE had experienced a shortfall of $35,803,051 for the fiscal year 2009. In his deposition, Dr. Pouncey attributed that shortfall to a decrease in funding due to several years of state pro-ration of budget funds and diminishing local tax revenue, as well as to the failure of the HCBOE to make equivalent and anticipatory cuts in expenditures, particularly in regard to staffing, which, according to Dr. Pouncey, composed 86% to 87% *197 of the HCBOE’s budget. Dr. Pouncey recommended that the HCBOE take various actions to cure its financial problems, including reducing its support staff from 1,100 positions to 850.[2] Dr. Pouncey testified that, if the HCBOE had not acted as requested, “the State Board would have officially intervened and taken over control of the district” and made the necessary personnel cuts.
The HCBOE adopted an initial reduction-in-force (“RIF”) plan in February 2011, terminating the employment of, among others, 137 probationary support staff, i.e., support workers who had not yet been employed for 3 continuous years. After that RIF plan was adopted, the HCBOE retained Dr. Ed Richardson, a former Superintendent of the State Board of Education, as a consultant. Dr. Richardson, who also testified by deposition, agreed with Dr. Pouncey that the HCBOE had had “no other choice” but to reduce personnel. Dr. Pouncey and his office worked with Dr. Richardson to develop a plan to further reduce the support personnel and other personnel expenses of the HCBOE in a manner that was least likely to impact classroom instruction. Dr. Pouncey developed a list of positions that Dr. Richardson should investigate for possible employment action. Dr. Richardson then met with many of the heads of the various departments within the school system regarding how many, and which, of their support personnel would lose their jobs.
Three of the supervisors with whom Dr. Richardson had conferred testified before the hearing officer. Belinda Williams, the director of the HCBOE’s human-resources department, testified that she had not agreed with Dr. Richardson on the number of positions that could be eliminated in her department, but, she said, Dr. Richardson “would not budge” on his proposal to terminate the employment of two support employees in addition to the two support employees who had already lost their jobs under the initial RIF plan.
Marc Seldon, the materials coordinator for the HCBOE, testified that he managed several areas for the HCBOE, including its warehouse and, at one time, its landscaping department. Seldon testified that he had provided Dr. Richardson with an outline of the potential savings the HCBOE could expect from contracting landscaping services to outside contractors and that he had also discussed the impact of any reduction in the workforce employed in the warehouse area. Dr. Richardson had thereafter recommended eliminating the positions of all the landscape workers[3] and inventory clerks,[4] as well as some of the warehousemen.[5] Seldon testified that he was not happy with Dr. Richardson’s decision and that he’ felt like the decision had been made without a clear understanding of what those positions accomplished for the HCBOE. Seldon stated that the plan had targeted more positions for elimination from his departments “than [he] would have liked.”
John Brown, the director of construction, maintenance, facilities, transportation, and safety for the HCBOE, testified that Dr. Richardson had informed him that his departments would be heavily affected by job cuts. According to Brown, Dr. Richardson had asked 'him to look at all the positions he supervised and determine *198 which positions Brown considered to be nonessential. Brown testified that he had identified only one nonessential position— building-equipment operator — because, he said, it had become “archaic.”[6] Dr. Richardson ultimately recommended terminating from Brown’s departments three of the four painter positions,[7] all of the mechanics,[8] three of four data-entry technicians,[9] the lone welder,[10] and at least two carpentry apprentices.[11] Brown testified that he felt like the recommendations had been made hastily and without complete information and that, in some cases, they would not produce an efficient outcome.
Dr. Richardson did not personally meet with any of the appellees or review firsthand the appellees’ performance of their positions. Each appellee who testified stated that his or her job was essential to the proper functioning of the school system and that his or her job responsibilities would still have to be performed by someone. In most instances, no specific person had been identified to assume the duties of the appellees. In other cases, Dr. Richardson had recommended hiring independent contractors to perform the duties of the eliminated positions. The appellees presented some evidence, particularly in regard to automobile-mechanic work, indi-eating that it could cost the HCBOE more to hire independent contractors.
After his meetings, Dr. Richardson recommended that, overall, the employment of 45 additional probationary support staff and 77 nonprobationary support employees,[12] i.e., employees with 3 or more years of continuous service, be terminated. Dr. Richardson testified that he had had to make the difficult decisions necessitated by the HCBOE’s financial condition to eliminate more positions than the supervisors had recommended. Working in coordination with Williams, and using the HCBOE’s RIF plan, which had been in effect since 1979, Dr. Richardson proposed a supplement RIF plan and created a list of those support employees whose employment he recommended for termination, including the appellees,[13] all of whom are nonprobationary employees.[14] Dr. Richardson testified that he had projected that the HCBOE would save approximately $3.1 million annually in support-personnel costs by implementing the supplemental RIF plan.[15] According to Dr. Pouncey, following implementation of the supplemental RIF plan, the HCBOE would be spending $492 per pupil for support per *199 sonnel, which, he said, would put the HCBOE in line with other school boards.
Dr. Moore presented the proposed supplemental RIF plan to the HCBOE, which adopted the plan through a meeting and vote held on April 21, 2011. Williams testified that the HCBOE had based its decision to terminate the employment of the employees on the best information that was available, indicating that the terminations were necessary for economic reasons and that the terminations would help the HCBOE reach a position of fiscal accountability.
In his deposition, Dr. Richardson testified that the terminations under the initial and supplemental RIF plans, along with other cost-savings measures, would result in approximately $46 million in savings over a two-year period. Dr. Richardson testified that the State Board of Education wanted the HCBOE to save as close to $40 million as possible over that two-year period in order to stave off intervention. Near the end of his deposition, Dr. Richardson testified as follows on direct examination:
“[Counsel for the HCBOE]: With regard to the requirement of the ... [State Board of Education] in order to avoid State take-over was to reduce that 38 to 40 million dollars that it needed to recover. Am I correct?
“Dr. Richardson: That’s it in a nut- ■ shell.”
He also testified on cross-examination:
“[Appellees’ counsel]: And that was a statement of you need to cut 40 million dollars or face State take-over, correct?
“Dr. Richardson: Yes, you need to make those substantial cuts. Now, if it came out to be 38.5, we wouldn’t have probably quibbled, but they had to be really close to that number.
[[Image here]]
“[Appellees’ counsel]: The key was to save 40 million dollars or you’re subject • to State take-over?
“Dr. Richardson: That’s right.”
After the HCBOE adopted the supplemental RIF plan, it hired a new superintendent, Dr. Casey Wardynski. Dr. Wardynski, in turn, hired several new administrators to either fill vacant positions or serve the HCBOE as administrators in a reorganized leadership structure. In one instance, Dr. Wardynski split one job into two new positions.- He also created a job entitled “Director of Transition.” Those positions increased the costs for support staff. Additionally, approximately one month after the supplemental RIF plan was adopted, the HCBOE rehired Lee Edminson, who had been a probationary employee. Brown testified that Edminson acted as a liaison for the HCBOE on ongoing large construction projects and that his expertise had enabled the HCBOE to save hundreds , of thousands, if not millions, of dollars in construction costs. Brown testified that the HCBOE, had advertised the job opening and that Brown had interviewed four candidates before eventually rehiring Edminson at his former salary.

The Hearing Officer’s Decision

The hearing officer made the following findings of fact. The duties performed by the appellees would still have to be performed by others upon their discharge. Although the HCBOE had plans to fill some of the positions by retained employees or to reassign or redistribute the job duties, those plans were, for the most part, vague and undeveloped and did not include an assessment of the new costs that would be incurred by the HCBOE. Likewise, the HCBOE presented no evidence as to the costs associated with hiring contractors to perform necessary welding and *200 painting services. As for using contractors to perform landscaping, mechanic, and locksmith work, the hearing officer noted that the evidence indicated that it would actually cost the HCBOE more for the same work.
In his conclusions of law, the hearing officer determined that the HCBOE had asserted two reasons for seeking to terminate the employment of the appellees — a justifiable decrease in jobs and other good and just cause — neither of which phrases had been defined for purposes of the FDA. The hearing officer noted that Alabama law defines “good cause” as “ ‘ “any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee’s task of building up and maintaining an efficient school system.” ’ ” See Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605, 609 (Ala.Civ.App.1977) (quoting 68 Am.Jur.2d Schools § 188). Based on that definition, the hearing officer reasoned that the HCBOE “must provide sufficient proof that it was suffering a severe financial hardship, that the actions taken were in response to that hardship, and that it is reasonably likely that the actions will improve the financial condition of the [HCBOE].”
The hearing officer assumed, “without deciding,” that the HCBOE was suffering a severe financial hardship, but he decided that the HCBOE had failed to prove “by sufficient evidence that the action taken in response to this hardship is a necessary and reasonable step designed to directly improve [its] financial position....” The hearing officer recognized that, by terminating the employment of the appellees, the HCBOE would reduce its obligation to pay their associated payroll expenses; however, he also recognized that the HCBOE had not proven that it would actually save money from those terminations because the HCBOE had not proven “that the work done by the [appellees] would either be performed by reassigned staff with no diminution in their ability to perform their original tasks, that the work could be outsourced or subcontracted at a reduced price, or that some or all of the [appellees]’ tasks could be eliminated.” Based on the testimony of Brown and Sel-don, the hearing officer concluded that the HCBOE would realize “little or no cost savings” from the proposed terminations.
The hearing officer further determined that the HCBOE had failed to prove that the terminations of the employment of the appellees was mandated by financial concerns. The hearing officer noted that the HCBOE had a shortfall of approximately $36 million and that Dr. Richardson had testified that a savings of $40 million over two years would be adequate to address that shortfall. Therefore, the hearing officer concluded, any savings beyond that amount “exceeded the ‘due to financial circumstances’ rationale given in the notice[s] of intent to terminate.” The hearing officer determined that “budget cuts already made and excluding in their entirety [the proposed terminations under the supplemental RIF plan] would have been sufficient to achieve this goal of $40 million over two years.”
Finally, the hearing officer rejected the HCBOE’s argument that it was overstaffed in comparison with other local school boards within the state because the HCBOE had not included in its notices to the appellees the allegation that overstaff-ing had contributed to its financial hardship. Moreover, the hearing officer stated that the HCBOE had proven only that the HCBOE had more staff than other similarly sized school districts within the state. The hearing officer also noted that the HCBOE “did not present evidence of any other circumstances on which the [hearing *201 officer] can conclude that they are similarly situated nor did it present any qualitative evidence that those other systems were on sounder financial footing.”

Issues on Appeal

The HCBOE argues on appeal that the hearing officer’s decision was arbitrary and capricious because he applied the wrong burden of proof and incorrectly assessed the issue to be decided. The HCBOE also argues that the hearing officer erred in concluding that the HCBOE gave the appellees insufficient legal notice of the reason for their proposed terminations. We consider those issues out of order.

Notice

The FDA provided that a notice of intent to terminate “shall state the reasons for the proposed termination, shall contain a short and plain statement of the facts showing that the termination is taken for one or more of the reasons listed in [former] § 36-26-102, [Ala. Code 1975,] and shall state the time and place for the ... meeting on the proposed termination .... ” Ala.Code 1975, former § 36-26-103(a). Any notice intended to comply with former § 36-26-103 must satisfy due process by being reasonably calculated to alert the affected employee of the grounds for termination upon which an employing board is relying so that the employee has a reasonable opportunity to defend against those grounds. Bishop State Cmty. Coll, v. Archible, 33 So.3d 577, 582 (Ala.Civ.App. 2008), overruled on other grounds, Ex parte Soleyn, 33 So.3d 584 (Ala.2009).
In this case, the HCBOE sent letters to the appellees stating that it proposed to terminate their employment due to a “justifiable decrease in jobs in the system.” Former § 36-26-102.[16] As to the factual underpinnings for that statutory reason, the HCBOE cited “financial circumstances” without further elaboration. Nevertheless, during the hearing, the attorneys representing the appellees stipulated “that [the appellees] were afforded whatever due process they were required under the [FDA],” including “that the notice was properly given.” That stipulation effectively removed from consideration any argument that the HCBOE had not adequately informed the appellees of the “financial circumstances” that had led to their proposed terminations. See George H. Lanier Mem’l Hosp. v. Andrews, 901 So.2d 714 (Ala.2004) (recognizing that stipulation relieves opposing party from establishing an element of a claim).
Notably, the hearing officer did- not conclude that the HCBOE’s use of the general phrase “financial circumstances” failed to reasonably notify the appellees of the precise financial condition of the HCBOE or that the notices failed to apprise the appel-lees that economic events had necessitated the supplemental RIF plan under which the appellees’ employment would be terminated.[17] The hearing officer actually ad *202 dressed those issues, implying that he had honored the stipulation made by the attorneys for the appellees acknowledging that the appellees had been properly notified that their employment was being terminated for financial reasons.
The hearing officer addressed the issue of lack of proper notice only as to “over-staffing,” treating that problem as if it constituted an independent and separate ground from the “financial circumstances” referred to in the notices. The hearing officer specifically stated that, because ov-erstaffing might not cause financial difficulties, the reference in the notices to “financial circumstances” did not adequately inform the appellees that the HCBOE intended to terminate their employment in order to reduce its support staffing to levels comparable with other local boards of education. Based on Ex parte Soleyn, supra, in which the Alabama Supreme Court held that the notice of intent to terminate must be sufficient to apprise the employee of the facts supporting the grounds for termination without referencing “surrounding circumstances,” the hearing officer reasoned that the HCBOE could not rely on overstaffing as a separate ground for termination.
The HCBOE did not, however, assert “overstaffing” as an independent reason for terminating the employment of the ap-pellees. The HCBOE presented evidence from Dr. Pouncey indicating that the HCBOE maintained far more staff than other local boards of education, resulting in per-pupil personnel expenses of more than double many other school boards according to at least one exhibit in the record. Dr. Pouncey testified that the HCBOE had been able to at least absorb those costs in “flush” times, but, he said, when the economy took a downturn, resulting in decreased tax revenues available for school funding and consecutive years of statewide proration, the HCBOE had incurred a $20-million budget deficit by failing to reduce its personnel costs and other expenditures accordingly. Dr. Pouncey testified that overstaffing was one of the main factors that had led to the financial circumstances facing the HCBOE. Dr. Pouncey also testified that, after he had identified overstaffing as a primary component of the fiscal crisis facing the HCBOE, he concluded that the HCBOE could resume a sound financial condition only by reducing its personnel expenses.
Rather than simply slash personnel indiscriminately until the shortfall could be covered, Dr. Richardson had determined that personnel expenses should be reduced only insofar as those reductions affected classroom performance as minimally as possible. Dr. Pouncey testified that he and his staff had researched the per-pupil personnel expenses of other local boards of education within the state and had found that those boards were delivering educational services to their students at a rate of less than half the personnel costs of the HCBOE. Dr. Richardson testified that the HCBOE was not producing above-average educational results due to its increased personnel expenses but was actually producing results on par with other school systems spending far less funds. That testimony shows that the HCBOE effectively used the financial structure of other local boards of education as a target to measure the amount of personnel expenses the HCBOE could safely reduce in order to resolve its deteriorating financial condition without compromising its educational mission. Hence, reducing staff numbers to comparable statewide levels was only a part of the solution to the financial crisis facing the HCBOE and was not an independent goal in and of itself.
Given all the circumstances in this case, we hold that no evidence supports *203 the hearing officer’s determination that the HCBOE relied on overstaffing as a separate ground for terminating the employment of the appellees such that it should have expressly notified the appellees of that justification. The hearing officer acted arbitrarily and capriciously in finding otherwise. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that a decision of a hearing officer must not be made arbitrarily and capriciously but must be based on some evidence); see also Ex parte Soleyn, supra (holding that arbitrary-and-eapricious standard of review applies to factual determinations of hearing officers in FDA cases). We thus proceed with our review of the remainder of the HCBOE’s appeal to determine whether the hearing officer had sufficient other grounds for rejecting the proposed termination of the employment of the appellees.

Justifiable Decrease in Jobs'

The HCBOE relied on a “justifiable decrease in jobs” as the sole ground for terminating the employment of the ap-pellees. Alabama law has not specifically defined that phrase. Through legal parlance, a decrease in jobs is “justifiable” when a school board is capable of providing a good reason for reducing or eliminating the number of positions or the number of employees within each position. See Black’s Law Dictionary 944" (9th ed. 2009) (defining “justifiable” as “[cjapable of being legally or morally justified; excusable; defensible”). An adverse change in the financial circumstances of a school board constitutes a sufficient good reason justifying a decrease in jobs. See, e.g., Board of Sch. Comm’rs of Mobile Cnty. v. Christopher, 97 So.3d 163 (Ala.Civ.App.2012) (school board experienced deteriorating financial condition due to state proration); Mobile Cnty. Bd. of Sch. Comm’rs v. Long, 46 So.3d 6 (Ala.Civ.App.2010) (board terminated employment of programmer through RIF necessitated by financial crisis); Glass v. Anniston City Bd. of Educ., 957 So.2d 1143 (Ala.Civ.App.2006) (board eliminated job of attendance officer, which was locally funded, after receiving over $500,000 less in funding from city than in prior years); and Woodham v. Alabama Aviation & Tech. Coll., 537 So.2d 934, 935 (Ala.Civ.App.1988) (recognizing, without directly deciding the propriety of the ac: tion, that college’s decision to close cafeteria that had consistently lost money for years in order to lease the foodrservice facility or to contract for food service justified termination of cafeteria manager).
 When a board of education cites a justifiable decrease in jobs as a basis for discharging a nonprobationary employee, “the only pertinent inquiry [i]s whether there was a ‘justifiable decrease in the number of [jobs].’ ” Williams v. Board of Educ. of Lamar Cnty., 263 Ala. 372, 375, 82 So.2d 549, 552 (1955) (construing analogous provision of former Teacher Tenure Act). As part of that inquiry, the burden of proof rests on the school board to prove a “justifiable decrease in jobs.” See Tipton v. Board of Educ. of Blount Cnty., 276 Ala. 571, 574, 165 So.2d 120, 123 (1964) (holding that board that had failed to produce any evidence of justifiable decrease in jobs could not rely on that ground for terminating employment of teacher); see also Whitney v. Board of Sch. Trs. of DeKalb Cnty. Eastern Cmty. Sch. Dist., 416 N.E.2d 1289 (Ind.Ct.App.1981) (mere recitation in notice letter informing employee that her job was being eliminated due for budgetary reasons did not provide necessary evidence of justifiable decrease in jobs). Axiomatically, if a school board claims that poor financial circumstances require a decrease in the number of jobs within its system, the school board must, as a threshold matter, prove the existence *204 of such poor financial circumstances. The burden then rests on the school board to show that reducing personnel would be at least one rational response to address its financial condition. See Taborn v. Hammonds, 324 N.C. 546, 552, 380 S.E.2d 513, 517 (1989) (construing North Carolina’s statute allowing school board to terminate the employment of teachers because of “‘justifiable decrease in the number of positions due to ... decreased funding ”).
If a school board presents a pri-ma facie case of a “justifiable decrease in jobs,” the burden shifts to the affected employee to disprove the ground for the termination of his or her employment. An employee cannot meet that burden by showing that the school board erroneously selected his or her employment contract fpr termination as opposed to the contract of some other employee. Once a school board establishes a good reason for reducing its workforce, “the reason for selecting [a particular employee’s] contract as the one to be cancelled [i]s not open to inquiry.... [T]he right of selection is a matter resting entirely with the employing Board of Education.” Williams, 263 Ala. at 375, 82 So.2d at 552. Rather, a nonprobation-ary employee contesting a justifiable decrease in jobs must show “that there is no rational basis for the decision [to implement a RIF] or that it is based on personal, political or discriminatory motives or is a subterfuge to avoid rights arising from [the employee’s nonprobationary status].” Taborn, 324 N.C. at 556, 380 S.E.2d at 519. Absent such proof, a nonprobationary employee can avoid cancellation of his or her employment contract only by showing that the board failed to follow its RIF policy, see Mobile Cnty. Bd. of Sch. Comm’rs v. Long, supra, or impermissibly retained a probationary employee in his or her position. See, e.g., Pickens Cnty. Bd. of Educ. v. Keasler, 263 Ala. 231, 82 So.2d 197 (1955).
The hearing officer did not apply the law as stated above; rather, he applied the standard set out in Ex parte Wilson, 984 So.2d 1161 (Ala.2007), for determining whether a board of education has “good and just cause” for terminating the employment of a teacher with continuing-service status under the former Teacher Tenure Act. In Ex parte Wilson, the supreme court stated that “good cause,” in a statute like the former Teacher Tenure Act,
“ ‘ “ ‘includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee’s task of building up and maintaining an efficient school system.’ ” ’ ”
Id. at 1168 (quoting Madison Cnty. Bd. of Educ. v. Wilson, 984 So.2d 1153, 1158 (Ala.Civ.App.2006), quoting in turn Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605, 609-10 (Ala.Civ.App.1977), quoting in turn 68 Am.Jur.2d Schools § 183) (emphasis omitted). Based on that definition, the hearing officer placed the burden on the HCBOE to prove “that it was suffering a severe financial hardship, that the actions taken were in response to that hardship, and that it is reasonably likely that the actions will improve the financial condition.”
To some extent, the legal standard used by the hearing officer coincided with the proper legal standard. Under the correct legal standard, the HCBOE had the burden of proving that it was suffering a severe financial hardship and that its action in implementing the supplemental RIF plan was taken in response to that hardship. The hearing officer did not decide whether the HCBOE had satisfied its burden as to the first element; instead, for purposes of his analysis, the hearing officer presumed that the HCBOE was in a *205 poor financial condition based on Dr. Pouncey’s deposition testimony regarding an approximately $36.5 million shortfall in its budget.[18] The hearing officer did, however, decide the second element, finding that the HCBOE had failed to prove that it had adopted the supplemental RIF plan in response to its financial problems. In that respect, the hearing officer erred.
The hearing officer found that Dr. Poun-cey and Dr. Richardson had determined that the HCBOE could overcome all of its financial problems within two years by cutting $40 million in expenses. Dr. Richardson projected that his cost-cutting measures would save the HCBOE $23 million per fiscal year in 2011 and 2012, or a total of $46 million. Thus, the hearing officer concluded, the HCBOE would save $6 million beyond the stated goal. The hearing officer reasoned that, because the supplemental RIF plan amounted to a savings of $3.1 million, which was less than the $6 million excess, the HCBOE did not need to sacrifice the appellees’ jobs in order to reach its financial target, so the supplemental RIF plan was not necessary.
The hearing officer misunderstood the evidence. Simple mathematics show that, by saving $40 million over two years, the HCBOE would only be meeting its annual $20 million operating budget deficit ($20 million x 2 years = $40 million). Unless the HCBOE were to receive additional funding, which turned out not to be the case, the HCBOE would not have been able to place any funds in reserve as required by the SFAA. Dr. Richardson specifically testified that, by cutting $46 million in expenditures, the HCBOE would create a $6 million “buffer” against expected future proration, which is precisely the purpose of the reserve funds required by the SFAA.[19] The HCBOE needed the “additional” $6 million to at least begin to accumulate some reserve funds, although it would still be over $10 million short of its SFAA-mandated reserve goal.[20]
As set out in the excerpts of his deposition quoted in our factual summary, Dr. Richardson stated that the purpose of saving $40 million was to avoid having the State Board of Education assume control of the finances of the HCBOE. But, even if Dr. Richardson had opined that saving $40 million over two years would solve all HCBOE’s financial problems,[21] it is undis *206 puted that he acted solely as a consultant for the HCBOE. and not as its decision maker, with the HCBOE voting on all the appropriate measures to.undertake in response to its financial crisis. Williams testified without dispute that the HCBOE had voted to adopt the supplemental RIF plan as a necessary financial measure, and the above calculations prove that it acted prudently in that regard. Contrary to the findings of the hearing officer, the HCBOE had not already alleviated its financial problems before implementing the supplemental RIF plan and that action remained necessary.
The findings of fact made by a hearing officer in an FDA case will be sustained unless they are arbitrary and capricious. See former § 36-24-104(b), Ala.Code 1975. Under the arbitrary-and-capricious standard, a finding of fact will not stand if it is completely unsupported by any evidence. See King v. City of Birmingham, 885 So.2d 802 (Ala.Civ.App.2004). Therefore, we conclude that the hearing officer acted arbitrarily and capriciously in finding that the HCBOE did not need to implement the supplemental RIF plan because it had already achieved all of its financial goals.
As to the last element from his analytical framework, the hearing officer noted that the HCBOE had received information indicating that discharging the ap-pellees would reduce the HCBOE’s expenditures by the amount of the appellees’ combined salaries but that the HCBOE had not considered the costs of replacing the services performed by the appellees. That factual finding is somewhat inaccurate because some exhibits presented to the HCBOE indicate the expected replacement costs of some services. Nevertheless, the record does support a finding that the HCBOE did not perform a cost-benefit analysis as to each individual appellee to determine whether retention of his or her position would be more efficient than elimination. In that regard, the hearing officer concluded that the HCBOE had used “an overly simplistic analysis.” The question before the hearing officer, however, was not whether the HCBOE had used the most appropriate, thorough, and reasonable method for designating the employees who would be discharged under the supplemental RIF plan, see Taborn, 324 N.C. at 559, 380 S.E.2d at 521, but whether the method it did use, no matter how simplistic, was rationally related to the purpose of reducing personnel costs given the existing exigent circumstances. Although at one point in his decision the hearing officer explicitly stated that the HCBOE had not acted rationally in formulating the supplemental RIF plan, his decision as a whole reflects his conclusion that the HCBOE could have, and should have, acted more rationally by using the analysis advocated by the appellees.
That analysis, however, violates well-settled Alabama law. The rule from Williams, supra, as recently reiterated in Board of School Commissioners of Mobile County v. Christopher, supra, holds that, once it is determined that there is a “ ‘ “justifiable decrease in the number of positions due to decreased enrollment or decreased funding” ’ ” and that the employee at issue was discharged pursuant to that ground, a hearing officer may not inquire into the reasoning behind the selection of that particular employee for discharge. 97 So.3d at 175 (quoting Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1016 (Ala.Civ.App.2011)). By examining the benefits of the services provided by the appellees, and the costs of replacing those services, the hearing officer necessarily undertook to • determine whether the HCBOE had correctly targeted the appellees’. specific employment for termination.
*207 The appellees clearly proved that they were valuable employees.[22] However, it is doubtful that the HCBOE could have selected any support employees for inclusion in the supplemental RIF plan who did not provide some necessary service. See Christopher, 97 So.3d at 176 (“[M]any, if not all, of the employees in various school systems throughout the state are excellent employees who have had positive impacts on school systems through their employment”). Dr. Richardson did not testify that the HCBOE would experience no adverse consequences due to the terminations of the employment of the appel-lees. Dr. Richardson merely testified that he had recommended elimination of those positions he believed would least impact the classroom instruction of the students. The HCBOE evidently agreed with Dr. Richardson’s assessment when discharging its “unfortunate burden” of making the “difficult decisions regarding which positions to eliminate pursuant to [the supplemental RIF plan].” Id. The hearing officer could not “ ‘usurp the role of the school board,’ ” id. (quoting Walker v. Montgomery Bd. of Educ., 85 So.3d at 1016), by second-guessing the financial wisdom of its choices.
We conclude, therefore, that the hearing officer erred in applying an incorrect analysis when determining whether the HCBOE acted rationally in terminating the employment of the appellees. Based on that error, as well as the factual errors discussed herein, we hold that the decision of the hearing officer must be reversed.

Conclusion

We reverse the decision of the hearing officer, and we remand the cause for further consideration by the same hearing officer based on the standards outlined herein. We instruct the hearing officer to determine whether the HCBOE proved that it was suffering from a valid financial hardship, whether the HCBOE adopted its supplemental RIF plan due to that financial hardship, and whether the supplemental RIF plan amounted to one rational method of responding to that financial hardship under the circumstances, without considering whether the HCBOE could have used a more thorough and reasonable approach when selecting the individual employees to be discharged. If the hearing officer determines that the HCBOE lawfully terminated the employment of the appellees due to a justifiable decrease in jobs, the hearing officer should address any remaining issues raised by the appel-lees as to whether the HCBOE followed its supplemental RIF plan and/or whether the HCBOE impermissibly retained probationary employees in the appellees’ positions. To accomplish those tasks, the hearing officer shall not conduct any further hearings, but should rely only on the evidence adduced at the previous hearing. The hearing officer shall produce his decision on remand within 90 days of the date of the issuance of this opinion.
APPLICATION GRANTED; OPINION OF NOVEMBER 30, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. The FDA has since been repealed and replaced by the Students First Act, § 16-24C-1 *196 et seq., Ala.Code 1975, effective July 1, 2011. Because the Students First Act does not apply retroactively, we apply the FDA in the present case. See Board of School Comm’rs of Mobile Cnty. v. Christopher, 97 So.3d 163, 166-67 (Ala.Civ.App.2012).

. "Support staff” refers to employees who did not serve in a teaching capacity.

. Of the appellees, Benson, McCurdy, Milton, and Powell work as landscape technicians.

. Friend serves as an inventory clerk.

. Crutcher is employed as a warehouseman/mover.

. Fisher acts as a building-equipment operator.

. Cobble works as a painter.

. Berryhill is designated as a mechanic.

. Smith is employed as a data-entry technician.

. Ford is the only welder employed by the HCBOE.

. Yarborough is classified as a carpentry apprentice but also works as a locksmith.

. Dr. Richardson further recommended the termination of the employment of 154 non-probationary teachers and the elimination of 4.5 nonprobationary assistant-principal positions, which recommendation the HCBOE approved.

. Frasier, Lindstrom, Lamelle, Robinson, and Hatton are classified as clerical assistants in the supplemental RIF plan.

. According to Williams, once Dr. Richardson identified the class of jobs subject to the supplemental RIF plan, the appellees were selected for the RIF based on their employment seniority.

. The appellees have maintained their employment with the HCBOE throughout the appeals process and continue to receive their salaries and benefits.

. Although the notices stated that the HCBOE was proposing to terminate the employment of the appellees for "other good and just causes,” at the hearing the HCBOE did not offer any other reason for terminating the employment of the appellees other than because of financial distress. Thus, the HCBOE abandoned that alternative statutory ground. See generally Hooks v. State, 21 So.3d 772 (Ala.Crim.App.2008) (party abandons claim by failing to present evidence at trial in support of claim).

. In their application for rehearing, the ap-pellees attempt to raise the argument that they were generally uninformed of the "financial circumstances” providing the basis for the supplemental RIF plan. However, the appellees did not file a conditional cross-appeal, see Bess v. Waffle House, Inc., 824 So.2d 783, 787 (Ala.Civ.App.2001) (describing a conditional cross-appeal as one filed by an appellee raising issues for review in the event the judgment in his or her favor is reversed), and, thus, we cannot consider that issue.

. For that reason, the hearing officer did not discuss the effect of the evidence presented by the appellees regarding the hiring of new and additional administrative staff and the rehiring of Edminson following the implementation of the supplemental RIF plan.

. Section 16-3A-9(b), Ala.Code 1975, provides:
"Local boards of education are authorized to expend such reserve funds if either of the following occur:
"(1) The Governor declares proration in the Education Trust Fund.
"(2) Total state funds appropriated by the Legislature to the local boards of education are less than the same appropriation for the preceding fiscal year.”

. The hearing officer agreed with those calculations in his order, but he determined that he was constrained from concluding that the HCBOE would not sufficiently cure its financial problems by cutting only $40. million, stating: "Where [the HCBOE’s] agents have testified that $40 million is sufficient, it would be an inappropriate substitution of the wisdom of the Hearing Officer for the actions of the [HCBOE] to suggest that more is needed.”

.At least at one point in his deposition, Dr. Richardson alluded to overcoming the $36.5 million shortfall through personnel cuts, although he later testified repeatedly that the purpose of the $40 million target was to stave off intervention by the State Board of Education. See McGough v. G & A, Inc., 999 So.2d 898 (Ala.Civ.App.2007) (holding that deposition must be viewed as a whole in determining the substance of the deponent’s testimony).

. Dr. Richardson testified that he had not recommended the termination of the employment of any of the appellees for poor performance or like cause.