THOMAS, Judge.
S.S. ("the mother") appeals decisions of the Mobile Juvenile Court ("the juvenile court") finding R.D., Jr. ("the child"), to be dependent and awarding his custody to R.D. ("the alleged paternal grandmother").
Background
The child was born on November 4, 2011. At that time, the mother was married to L.G. ("the presumed father"), whose paternity was therefore presumed by law pursuant to § 26-17-204(a)(1), Ala. Code 1975. The record indicates that the presumed father has persisted in his paternity of the child, but it also contains assertions that the child's biological father is the alleged paternal grandmother's son, R.D., Sr. ("the alleged father"), for whom the child is named.
On May 7, 2012, the alleged paternal grandmother filed a sworn pro se petition in the juvenile court, in which she averred that the child was dependent and requested an award of his custody ("the dependency action"); that action was assigned case no. JU-12-733.01. The record contains an affidavit of substantial hardship that appears to have been completed by the alleged paternal grandmother in which she requested that the juvenile court appoint an attorney to represent her. Rather than doing so, the juvenile court appears only to have waived the docket fee.[1]
The record also contains a written order of the juvenile court dated May 11, 2012, awarding the alleged paternal grandmother pendente lite custody of the child; the *342 case-action-summary sheet of the dependency action indicates that the order was entered on June 18, 2012. The presumed father later filed a motion to dismiss the dependency action, explaining that he persisted in his paternity of the child. The juvenile court entered an order, which denied the presumed father's motion but also specifically acknowledged the presumption of his paternity, thereby advising "all parties ... so that proper pleadings may be filed and appropriate burden of proof observed."
On October 15, 2014, the mother filed a sworn pro se petition in the juvenile court requesting an award of visitation with the child, which action was given a separate case designator from the dependency action ("the mother's action"); that action was assigned case no. JU-12-733.02. The record contains several orders with captions that collectively reference the dependency action, the mother's action, and several other actions regarding some of the mother's other children. Although, as is mentioned later in this opinion, the juvenile court appears to have tried all the actions on the same day and the issues raised by the dependency action and the mother's action in the same hearing, the record contains no order consolidating any of the actions, and therefore they appear to have remained separate. See Committee Comments on 1973 Adoption of Rule 42, Ala. R. Civ. P. (noting that " Rule 42(a) speaks both of joint hearings or trials and of consolidation" (emphasis added) ). The actions regarding the mother's other children are not relevant to this appeal.
On February 3, 2015, the alleged father filed a motion in the dependency action asking the juvenile court to order that genetic testing be conducted to establish his paternity of the child. The exact manner in which the alleged father became a party to the dependency action is not disclosed in the record, but it does not appear that either the mother or the alleged paternal grandmother objected to his inclusion as a party. That same day, the juvenile court entered an order stating that the alleged father's motion would be considered at trial. On February 5, 2015, however, the juvenile court entered an order in both the dependency action and the mother's action requiring that genetic testing be done to determine the alleged father's paternity of the child and specifying, in relevant part, the mother's pendente lite visitation with the child.
On May 28, 2015, the mother filed a motion in the dependency action asking the juvenile court to hold the alleged paternal grandmother in contempt for, she said, failing to comply with the pendente lite visitation provisions of its February 5, 2015, order. On July 1, 2015, the juvenile court entered an order in the dependency action stating that the mother's contempt motion would "be addressed at the trial." The mother later filed in the dependency action a motion asking the juvenile court to order that the alleged father be tested for illegal drug use, which the juvenile court denied.
On August 18, 2015, the juvenile court conducted a trial at which, among other witnesses, the mother, the alleged paternal grandmother, the presumed father, and the alleged father testified; each of them, except the alleged paternal grandmother, was represented by counsel. At the beginning of the trial, the mother's attorney orally clarified that the mother was actually seeking an award of the child's custody, as opposed to only visitation with the child. The alleged paternal grandmother did not object to the mother's request. The mother's request for custody of the child was therefore tried by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P.;
*343 Edwards v. Edwards, 79 So.3d 629, 632-33 (Ala. Civ. App. 2010).
Also at the beginning of the trial, the alleged father's attorney explained that, due to a delay in communication, the genetic testing that had been ordered by the juvenile court to establish the alleged father's paternity of the child had not yet been conducted. In response, the presumed father's attorney explained that the presumed father still persisted in his paternity of the child.
The juvenile-court judge then orally stated:
"I'll dismiss [the alleged father] as a party. He'll have to wait outside as a witness, and that's-that ends your lawyer, okay? He can always file a motion to reconsider, and we can do something else if somebody can find some law that changes what[,] to my understanding[,] is still the Alabama law is that[,] if you're married, then the father-the husband is the presumed father, and he trumps all other rights. So I'll today dismiss as to [the alleged father]."
At the close of the trial, the juvenile-court judge stated: "Okay. I find the child to be dependent. Custody to the [alleged paternal grandmother]." The juvenile court also stated: "Based on the testimony of the mother and [the evidence that the presumed father] is the legal father, I can partially impute minimum wage to both of them so I'm going to order both-both to pay $246 a month [as] child support."
The juvenile court then explained that it would reserve ruling on the issue of the mother's visitation with the child until after considering the evidence presented in the actions regarding the mother's other children. After a brief recess, however, the juvenile court indicated that an agreement had been reached regarding the mother's visitation with the child. The child's guardian ad litem then orally set out a visitation schedule. The alleged paternal grandmother was not present during that portion of the proceedings. The juvenile-court judge did not make any statement indicating that it had decided the mother's May 28, 2015, contempt motion.
The case-action summaries of both the dependency action and the mother's action indicate that no additional activity occurred in either action until November 4, 2016, at which time an entry was made in the dependency action indicating that that action had been "disposed" on May 11, 2012, which was, as previously noted, actually the day on which the juvenile court had rendered a written order awarding the alleged paternal grandmother pendente lite custody of the child. On May 12, 2017, or approximately 21 months after the August 18, 2015, trial, the juvenile court rendered two written orders in both the dependency action and the mother's action. The first order provides, in relevant part:
"The case of [the child], comes before the Court for determination of custody[,] (.01)[,] and for visitation, (.02). [The alleged father] was present in court and was represented by [an] appointed attorney ....
"The Court finds the child to be dependent and that the mother and father are unable to discharge their responsibilities to and for the child. The Court finds that it is in the best interests of the child that custody of the child shall be awarded to [the alleged paternal grandmother].
"It is ORDERED, ADJUDGED, and DECREED by the Court that legal custody of [the child] is awarded to [the alleged paternal grandmother]. As legal custodian of said child, [the alleged paternal grandmother] is authorized by this Court to seek and consent to medical treatment, emergency or otherwise, *344 to provide for the needs of the child, upon condition that said medical treatment be rendered by licensed practicing physicians or nurses, and to enroll said child in any and all schools. [The alleged paternal grandmother] is further authorized by this Court to permit said child to travel and visit outside Mobile County and the state of Alabama.
"The Court awards no visitation at this time."
In its first order, the juvenile court also awarded attorneys' fees to the child's guardian ad litem, the alleged father's appointed counsel, the mother's appointed counsel, and the presumed father's appointed counsel.
The juvenile court's second written order was, in its entirety, a verbatim reproduction of the paragraph quoted above regarding the alleged paternal grandmother's award of legal custody and the rights it entailed. The juvenile court's orders were entered in each action on May 16, 2017. Because each order was entered in each action and because the entirety of the second order was included within the first order, we will hereinafter refer to the orders collectively as one judgment that was entered in each action on May 16, 2017.
On May 30, 2017, the mother filed a postjudgment motion in each action in which she requested a new trial because, she said, the child was no longer dependent. The juvenile court did not enter an order in the mother's action regarding the postjudgment motion that she filed in that action. In the dependency action, however, the juvenile court entered an order on June 29, 2017, purporting to set a hearing regarding the mother's postjudgment motion for July 5, 2017. The case-action summary of the dependency action also contains an entry for July 5, 2017, indicating that the juvenile court entered an order that day, presumably addressing the mother's postjudgment motion, but the record does not contain that order. Notwithstanding the entry of the juvenile court's June 29, 2017, and July 5, 2017, orders, however, the mother's postjudgment motions were denied by operation of law on June 13, 2017.[2] See Rule 1(B), Ala. R. Juv. P. The mother filed a notice of appeal in each action on June 14, 2017, and we consolidated the appeals ex mero motu; the appeal from the judgment entered in the dependency action was assigned appeal no. 2160729, and the appeal from the judgment entered in the mother's action was assigned appeal no. 2160730.
Upon initial review, many aspects of these appeals remained unclear. We therefore issued an order on December 28, 2017, requiring that the parties submit letter briefs regarding certain issues. The parties complied with our order and provided additional arguments regarding the issues noted.
Analysis
On appeal, the mother argues that "[t]he child was not dependent at the time of the trial [and that t]he [juvenile] court violated the mother's due process rights in not allowing her to prove the child was not dependent at the time of the final judgment." In other words, the mother argues both that the evidence presented at trial was insufficient to support a finding of dependency and that the juvenile court *345 erred by waiting approximately 21 months to enter a judgment in the dependency action and the mother's action. The alleged paternal grandmother appears pro se on appeal, asserting that she cannot afford an attorney and that the juvenile court denied her requests for appointed counsel.[3] In response to the mother's arguments, the alleged paternal grandmother essentially argues that sufficient evidence existed to support the juvenile court's dependency finding. We consider the mother's argument regarding the juvenile court's 21-month delay first.
In support of her argument, the mother cites D.D.P. v. D.M.B., 173 So.3d 1 (Ala. Civ. App. 2015), a case in which this court held that, when a juvenile court bifurcates the adjudicatory and dispositional determinations of a dependency action, the juvenile court must consider whether the child is dependent not only at the time of the adjudicatory determination but also again at the time of the dispositional determination. Id. at 3-4. There is no indication that the juvenile court in this case intended to bifurcate the adjudicatory and dispositional aspects of the dependency action. Instead, it appears that the juvenile court simply delayed entry of a judgment for approximately 21 months after the conclusion of the trial.
In her letter brief, the mother also cites J.B. v. Jefferson County Department of Human Resources, 252 So.3d 674 (Ala. Civ. App. 2017), in support of her argument. In J.B., we held that a dependency determination that had been entered by a juvenile court in March 2017 could not have been properly based on that mother's June 2016 stipulation to the child's dependency, and we reversed the judgment and remanded the cause "for an evidentiary hearing regarding the issue whether the child remains dependent under Alabama law and, if so, for an appropriate custodial disposition." Id. at 676. J.B. is distinguishable from these appeals, however, in part because the parties in J.B. had agreed on appeal that the juvenile court had committed reversible error, which the parties to these appeals have not done. Id. at 676.
In C.P.M. v. Shelby County Department of Human Resources, 185 So.3d 461, 466 (Ala. Civ. App. 2015), this court considered an 11-month delay "between the end of testimony and the entry of the judgment" in the context of a termination-of-parental-rights action. After commenting that specific time constraints are placed on such actions by our statutory law and the Alabama Rules of Juvenile Procedure, this court also noted that the juvenile court's judgment in that case "could not have been based on [the father's] current circumstances," and we reversed the judgment and remanded the cause for further proceedings. Id. at 468.
Based on the reasoning of C.P.M. and the rationale supporting D.D.P. and J.B., the mother's argument that a finding of dependency must be based on the circumstances existing at the time of the determination has merit. In other words, the juvenile court's May 16, 2017, determination regarding the child's dependency could not have been properly based on the evidence presented at trial because approximately 21 months had passed since the trial. We therefore reverse the juvenile court's judgment in the mother's action, and we remand the cause for a full evidentiary hearing regarding the mother's request for custody, which will presumably involve an examination of whether the child remains dependent. In light of the foregoing, we pretermit the mother's other argument that insufficient evidence was presented at *346 trial to support the dependency determination set out in the May 16, 2017, judgment that the juvenile court entered in the mother's action. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala. Civ. App. 2005).
We cannot consider the mother's arguments as they relate to the May 16, 2017, judgment that the juvenile court entered in the dependency action, however, because that judgment was not final. As noted above, the mother filed a motion in the dependency action on May 28, 2015, asking the juvenile court to hold the alleged paternal grandmother in contempt for failing to comply with the pendente lite visitation provisions of its February 5, 2015, order.
"Although neither party has raised the issue of this court's jurisdiction to entertain this appeal, this court must first determine whether it has jurisdiction over this appeal. 'Jurisdictional matters are of such importance that a court may take notice of them ex mero motu.' McMurphy v. East Bay Clothiers, 892 So.2d 395, 397 (Ala. Civ. App. 2004). 'An appeal ordinarily will lie only from a final judgment-i.e., one that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.' Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990). '[T]he question whether a judgment is final is a jurisdictional question.' Johnson v. Johnson, 835 So.2d 1032, 1034 (Ala. Civ. App. 2002), overruled on other grounds, Eustace v. Browning, 30 So.3d 445 (Ala. Civ. App. 2009). The pendency of an unadjudicated contempt motion alleging a party's failure to obey orders entered during the progress of the litigation renders a judgment nonfinal. See Decker v. Decker, 984 So.2d 1216 (Ala. Civ. App. 2007) ; Heaston v. Nabors, 889 So.2d 588 (Ala. Civ. App. 2004)."
A.C. v. C.C., 34 So.3d 1281, 1286-87 (Ala. Civ. App. 2009) (emphasis added).
In her letter brief, the mother argues that the juvenile court's May 16, 2017, judgment entered in the dependency action was final because, she says, the portion of the judgment denying her request for visitation constituted an implicit denial of her May 28, 2015, contempt motion, citing as support Faellaci v. Faellaci, 67 So.3d 923 (Ala. Civ. App. 2011). In Faellaci, we held that a circuit court's judgment requiring a husband to pay only a child-support arrearage had implicitly denied the wife's petition for a rule nisi at least in part because "[t]he trial-court judge [in that case had indicated] that his award of a child-support arrearage to the wife was intended as a ruling on her petition for a rule nisi." Id. at 925. In so doing, we explained:
"We conclude that such an expression, followed by an order that did not specifically hold the husband in contempt, satisfies this court, in these particular circumstances, that the trial court implicitly concluded that the husband's behavior did not rise to the level of contempt in this case. Although an explicit ruling on pending contempt petitions is always more desirable, we find that the trial court's judgment sufficiently indicates an intention to conclusively rule on the wife's pending petition for a rule nisi."
Id.
The record in these appeals contains no such expression. At trial, the following exchange occurred between the mother and her attorney during direct examination:
"Q: Isn't it true that the only time you've been able to see [the child] regularly was after this Court entered an order and giving you some visitation?
"A: Yes ma'am.
*347 "Q: And she did not always allow you to see him even then, did she?
"A: No, ma'am."
Thus, it does not appear that the mother abandoned her request that the juvenile court hold the alleged paternal grandmother in contempt for violating the pendente lite visitation provisions of its February 5, 2015, order. Cf. Harley v. Anderson, 167 So.3d 355, 360 n.5 (Ala. Civ. App. 2014) (citing Huntsville City Bd. of Educ. v. Frasier, 122 So.3d 193, 201 n.16 (Ala. Civ. App. 2013), and Hooks v. State, 21 So.3d 772 (Ala. Crim. App. 2008), for the proposition that "a party abandons a claim by failing to present evidence at trial in support of the claim").
As already noted, the juvenile court did not explicitly rule on the mother's pending contempt motion, and the record contains no expression demonstrating its intent to do so. Moreover, we do not agree that the juvenile court's decision to deny the mother prospective visitation in its May 16, 2017, judgment necessarily constitutes an implicit determination that the alleged paternal grandmother had not contumaciously violated the pendente lite visitation provisions of its February 5, 2015, order while the dependency action was pending. The juvenile court does not appear to have resolved that claim, and the May 16, 2017, judgment that it entered in the dependency action was therefore not final.
Additionally, as noted above, the alleged father filed a motion in the dependency action on February 3, 2015, asking the juvenile court to order that genetic testing be conducted to establish his paternity of the child. At the beginning of the trial, the juvenile court orally "dismiss[ed the alleged father] as a party," but it entered no written order to that effect. Furthermore, at the close of the trial, the juvenile court orally ruled that the presumed father was the child's father and determined his child-support obligation but, again, entered no written order deciding those questions. In the May 16, 2017, judgment that the juvenile court entered in the dependency action, however, the juvenile court mentions the alleged father by name in the first paragraph of the judgment. In the final paragraph of the judgment, the juvenile court also awards an attorney fee to the presumed father's appointed attorney, mentioning the presumed father by name.
In its judgment, the juvenile court makes no express determination regarding paternity. Moreover, in light of the juvenile court's reference to both the alleged father and the presumed father in its judgment and in its oral determinations at the beginning and end of the trial, which were presumably based on § 26-17-607(a), Ala. Code 1975, and our decisions in cases like L.R.B. v. Talladega County Department of Human Resources, 223 So.3d 923 (Ala. Civ. App. 2016), we conclude that the juvenile court's judgment is sufficiently ambiguous so as not to constitute an implicit adjudication of paternity. Cf. B.H. ex rel. E.D.E. v. R.E., 988 So.2d 565, 568 (Ala. Civ. App. 2008) (concluding that a juvenile court's judgment had implicitly adjudicated paternity when, among other things, it had awarded an alleged father custody of the child in question). Thus, the juvenile court does not appear to have resolved the alleged father's request for an adjudication of paternity, and the May 16, 2017, judgment that it entered in the dependency action is not final for that reason as well.
In conclusion, we reverse the May 16, 2017, judgment entered by the juvenile court in the mother's action because its decision not to award the mother custody of the child based on the child's dependency was based on the evidence that was presented at a trial occurring approximately 21 months before entry of the judgment and could not have therefore been based *348 on current circumstances. See C.P.M., 185 So.3d at 468. Thus, we remand that action for a full evidentiary hearing regarding the mother's request for custody of the child. Because a final judgment has not been entered in the dependency action, we cannot consider the mother's appeal from the juvenile court's May 16, 2017, judgment entered in that action, and we therefore dismiss that appeal. See A.C. v. C.C., 34 So.3d at 1287.
2160729-APPEAL DISMISSED.
2160730-REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

It is unclear why the juvenile court did not appoint an attorney to represent the alleged paternal grandmother, but we note that doing so was within its discretion. See § 12-15-305(a), Ala. Code 1975 (providing the following regarding dependency actions: "Upon request and a finding of indigency, the juvenile court may appoint an attorney to represent the petitioner and may order recoupment of the fees of the attorney to be paid to the State of Alabama." (emphasis added) ).

We note that, insofar as the juvenile court's July 5, 2017, order presumably purported to rule on the mother's postjudgment motion, that order was void. See Ex parte Limerick, 66 So.3d 755, 757 (Ala. 2011) ("If a [postjudgment] motion is ... denied by operation of law, 'the trial judge then loses jurisdiction to rule on the motion' and is 'without jurisdiction to enter any further order in [the] case after that date.' Ex parte Davidson, 782 So.2d 237, 241 (Ala. 2000). Any order entered after the trial court loses jurisdiction is void. Id.'').

See note 1, supra.