DONALDSON, Judge.
Generally, an appellate court has no jurisdiction to consider an appeal from a nonfinal judgment. Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala.Civ.App.2010). Joan H. Harley appeals from a judgment of the St. Clair Circuit Court (“the trial court”) setting aside certain inter vivos transfers made to her by Floyd Anderson (“Floyd”) before his death on the basis that she exerted undue influence on Floyd. Because the order appealed from is not final, we dismiss the appeal.
Floyd and Edward Ray Anderson (“Ray”) were brothers. On June 17, 2004, Floyd executed a will naming Ray as sole executor and beneficiary of Floyd’s estate in the event that Jean Anderson (“Jean”), Floyd’s wife, predeceased him. On August 13, 2009, Floyd and Jean executed a warranty deed to convey real property located in St. Clair County to Ray and Ray’s wife, Dorothy L. Anderson (“Dorothy”), as joint tenants with right of survivorship, but reserving for themselves a life estate in the property. On January 12, 2010, Floyd executed a power of attorney (“the original POA”) appointing Ray as his attorney-in-fact. Shortly after Floyd executed these documents, Ray hired Harley to cook and clean for Floyd and Jean. After Jean’s death on June 1, 2011, Floyd and Ray became estranged for reasons that the record does not make clear.
The litigation in the trial court consisted of four separate cases: case no. CV-11-900167, ease no. CV-12-41, case no. CV-12-55, and case no. CV-12-900122. *357 Before his death, Floyd filed a complaint against Ray and Dorothy to set aside the warranty deed he had executed in August 2009. That case was docketed as case no. CV-11-900167. After Floyd’s death, the trial court appointed an administrator ad litem to represent Floyd’s estate in that proceeding. Case no. CV-12-41 was initiated when a will contest filed by Harley in the St. Clair Probate Court was removed to the trial court. The trial court ordered the consolidation of case no. CV-11-900167 and case no. CV-12-41. The trial court ultimately dismissed the claims asserted in case no. CV-11-900167 by an order dated June 7, 2013, and purported to dismiss the will contest in that same order.[1] On appeal, the parties raise no issues arising from case no. CV-11-900167 and case no. CV-12-41.
Ray, as personal representative of Floyd’s estate, initiated case no. CV-12-900122 on October 16, 2012, by filing a complaint against Harley in the trial court requesting injunctive relief. Specifically, the complaint sought to restrain Harley from disposing of funds she had received by transfer from Floyd before his death and alleged that the funds belonged to Floyd’s estate.
Case no. CV-12-55 was initiated on July 12, 2012, when Ray and Deborah filed a complaint against Harley asserting trespass and ejectment claims and seeking injunctive relief, alleging that Harley was withholding from Ray and Dorothy possession of the real property that Floyd had deeded to them.[2] The trial court entered an order on November 26, 2012, ejecting Harley from the property. That order did not address the trespass claim. Ray and Dorothy amended the complaint in case no. CV-12-55 on February 8, 2013, to add claims alleging unjust enrichment and seeking a declaratory judgment, as well as to request injunctive relief to restrain Harley from disposing of assets that were transferred from Floyd before his death.[3] *358 Specifically, the amended claims sought to set aside certain inter vivos transfers of funds and personal property Floyd had made to Harley before his death on the basis that Harley had unduly influenced Floyd. The trial court’s judgment on the claims asserted in the amended complaint forms the basis of this appeal. The issues concerning undue influence and the validity of the inter vivos transfers were tried by the trial court on June 13, 2013. The trial court took additional testimony on June 20, 2013.
The following undisputed facts were presented to the trial court:[4]
“1. [Floyd] Anderson was married to Jean Anderson (‘Mrs. Anderson’). Ms. Harley was hired by the elderly Andersons in February, 2010, as their housecleaner.
“2. Ms. Harley provided other services to the Andersons, including cooking, planting their garden, cutting their grass, running errands (including to the pharmacy to pick up medication(s) for him/her/them), and grocery shopping. She took them to the doctors, sorted out medications for them, and for [Floyd], took him to bank(s) to Merrill Lynch, to attorneys, and to his tax preparer.
“3. Ms. Harley also met and talked with [Floyd’s] physician(s) and/or attended medical appointment(s) with him, attended meeting(s) between him and his attorneys(s), and talked to Merrill Lynch employees concerning his accounts).
“4. [After Jean’s death, Floyd] Anderson’s physician(s) directed that he no longer drive, so he was dependent on other(s) for transportation, including (or limited to) Ms. Harley and, at times, her daughter.
“5. [Floyd] relied on and trusted Ms. Harley. According to Ms. Harley’s testimony, [Floyd] ‘had nobody else to depend on,’ and she developed a ‘trusted’ and ‘confidential’ relationship with him as he grew more dependant on her.
“6. Ms. Harley prepared legal documents) for [Floyd]’s signature, including (i) a ‘Letter of Revocation’ (the ‘First Purported POA Revocation’), purporting to revoke [Floyd]’s [original POA]; (ii) a last will and testament favoring Ms. Harley (the ‘Purported Will’); and (iii) lease(s) for certain real property owned by [Floyd], including property purportedly rented by [Floyd] to Ms. Harley’s daughter and son-in-law. The Purported Will was prepared by Ms. Harley on her computer, and with text she obtained from the Internet.
“7. The First Purported POA Revocation was executed on May 31, 2011, when Ms. Harley drove or took [Floyd] to a bank to have his signature witnessed and/or notarized. The Purported Will was allegedly executed on September 30, 2011, and Ms. Harley drove or took [Floyd] to a bank to have his signature witnessed and/or notarized in her presence.
“8. On September 14, 2011, Ms. Harley drove or took [Floyd] to an attorney’s office, where [Floyd] executed a ‘Notice of Revocation of Power of Attorney’ (the ‘Second Purported POA Revocation’).
*359 “9. On or about September 14, 2011, [Floyd] executed a power of attorney instrument, appointing Ms. Harley as his attorney-in-fact (the ‘2011 POA’). Ms. Harley performed the 2011 POA on her computer, and she drove or took [Floyd] to a bank to have his signature on it witnessed and/or notarized.
“10. On November 9, 2011, Ms. Harley drove or took [Floyd] to BB & T [Bank (‘BB & T’) ], at which time her name was placed on his BB & T Account ... as a joint tenant with right of sur-vivorship (JTROS).
“11. In December, 2011, Ms. Harley became an ‘independent care giver’ to [Floyd] and, by then, worked for him three (3) days a week. Her daughter also worked for [Floyd] from time to time.
“12. [Floyd] fell at home on Christmas Day, 2011. Thereafter, Ms. Harley moved into [Floyd]’s home to live with him.
“13. On or about January, 2012, Ms. Harley began to pay [Floyd]’s bills from his aecount(s) and arrange his checkbook.
“14. On February 5, 2012, while [Floyd] was in the hospital, Ms. Harley’s name was placed on his two (2) Merrill Lynch accounts ... as ‘TOD’ (Transfer on Death) or other beneficiary. The forms necessary to accomplish that task were picked from Merrill Lynch by Ms. Harley’s son-in-law and delivered to Ms. Harley at her request, and she then took them to the hospital where [Floyd] signed them.
“15. Further, while [Floyd] was in the hospital on or about February 5, 2012, Ms. Harley’s name was placed on at least two (2) bank Certificates of Deposit (CD) (the ‘CDs’) of [Floydjs as a joint tenant with right of survivorship (JTROS) or a beneficiary. Each of the two (2) CDs later matured, and the principal (and interest accrued) on the said CDs, totaling $9,840 and $90,000, respectively, were deposited to account(s) titled jointly (or with right of survivor-ship) with Ms. Harley or on which she was designated as a ‘beneficiary.’ After [Floyd]’s death, Ms. Harley claimed the funds on deposit in said account, including the said CD amounts.
“16. .On February 5, 2012, Ms. Harley’s name (and/or that of her family member[s]) was placed on the titles to several of [Floyd]’s vehicles (the “Vehicle Transfer’).
“[17. Before Floyd’s death, Harley also wrote checks from his BB & T bank account on which she was named as joint tenant or joint tenant with right of sur-vivorship to pay an attorney.]
“18. After [Floyd]’s death [on April 26, 2012], Ms. Harley withdrew the funds in [the] BB & T [aecount](then totaling $87,427.20) as the surviving joint tenant on'or about September 4, 2012, and deposited such funds to an Alianz annuity account titled in her name.
“19. Following [Floyd]’s death, Ms. Harley withdrew and/or claimed the funds and property in one of the Merrill Lynch Accounts ..., then having a value of approximately $90,000.
“20. [Floyd]’s Last Will and Testament executed on June 17, 2004 [naming Ray as executor and beneficiary], was admitted to probate in the' Probate Court of St. Clair County, Aabama, on or about May 7, 2012. Letters Testamentary were issued to the Personal Represfentative on or about May 4, 2012.
[[Image here]]
“22. [Floyd]’s Merrill Lynch Account ... was frozen after his death pursuant to an order entered by this Court, and the' funds and securities on deposit in said account (having a present value of *360 .approximately $145,000) continue to be held by Merrill Lynch.
“23. [Floyd]’s Merrill Lynch Account ... (a ‘retirement account’ on which Ms. Harley was a designated beneficiary) was claimed by Ms. Harley after his death, and the funds and securities in said account were removed by her and the securities were then liquidated. Pursuant to an order of this Court, approximately $90,000 of such funds were turned over to Ms. Harley’s attorney and are held in his law firm’s trust account.”
On July 25, 2013, the trial court entered an order finding that Ray and Deborah had satisfied their burden of proof to establish a presumption of undue influence by Harley with respect to all the inter vivos transfers and that Harley had failed to rebut the presumption.[5] The trial court’s order directed Harley, BB & T Bank, Allianz, Merrill Lynch, and Harley’s family to deliver any of the transferred funds, vehicles, or tangible property that were in their possession to Ray, as the personal representative of Floyd’s estate. Regarding the various accounts, the trial court determined:
“The Court finds that certain financial and securities accounts formerly titled in the name of [Floyd] Anderson ... were made subject to specific transactions during his lifetime that resulted in Ms. Harley’s name being placed on said accounts as his pay-on-death beneficiary; his co-tenant, with right of survivorship; and/or in such other manner(s) so as to result in the funds and securities in said Accounts passing to Ms. Harley by operation of law at his death or otherwise. Such accounts are more specifically described as follows:
“(i) An Allianz annuity account, ... totaling approximately $87,427.20 on or about the date of [Floyd’s] death, titled in [Harley’s] name; said annuity account now frozen by order of this court dated February 22, 2012, entered in CV-2012-55, and presently held by Allianz. These funds were previously deposited and debited from that certain BB & T account ending in account number -0815 (the ‘BB & T Account’) and referenced below.
“(ii) Merrill Lynch Account No. - OF60 ..., having a present value totaling approximately $152,000 in cash and cash equivalents and/or securities; said securities account now frozen by order of this Court and presently held by Merrill Lynch; and
“(iii) Merrill Lynch account, Account No. -0676 ..., having a value of approximately $90,000 on or about date of [Floyd’s] death; the funds and securities in said account having been liquidated and some or all of the proceeds from same were turned over to Ms. Harley’s attorney and are presently held in his law firm’s account.
“(iv) A BB & T checking account ending in account number -0815 (i.e., the BB & T Account) that totaled approximately $23,000 at the time Ms. Harley’s name was added to said account, based on her testimony, and which account was increased in value by the deposit of an additional $9,840 in proceeds from a Certificate of Deposit (CD), for a total approximate *361 value of $32,840 (the ‘BB & T Ac-counVCD’).”
Concerning damages resulting from Harley’s expenditures from the various funds that Floyd had transferred, paragraph 10 of the trial court’s order provides:
“To the extent any amount of the funds contained in the B & BT, Allianz, and/or Merrill Lynch Accounts that existed and/or were on deposit on the date of the respective transaction for each such Account have been spent, dissipated or wasted by Ms. Harley, the Court enters a judgment for money damages against her for all such amounts; including, without limitation, to the extent the BB & T Account/CD balance is now less than $32,840, the Court hereby enters judgment against Ms. Harley for the amount of the difference between the $32,840 sum and the current balance. The Court grants the Plaintiff[s] leave to prove at a later date the exact amount of any such damages as may be necessary.”
On August 5, 2013, Harley filed a motion to alter, amend, or vacate the July 25, 2013, order along with an emergency motion to stay enforcement or execution of the order. In the postjudgment motion, Harley argued, in part, that the order was nonfinal because of the provisions of paragraph 10. On August 13, 2013, following a hearing, the trial court denied Harley’s motion to alter, amend, or vacate. On the same date, the trial court directed that all assets of Floyd’s estate were to remain frozen and set a status conference for October 16, 2013. On September 24, 2013, Harley filed a notice of appeal-to our supreme court. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975. Harley appealed only from the July 25, 2013, order entered in case no. CV-12-55. The record, however, has been supplemented by Harley pursuant to Rule 10(f), Ala. R.App. P., to include documents from case nos. CV-11-900167, ' CV — 12—41, and CV-12-900122. On appeal, Harley’s only argument is that the trial court improperly determined that Harley unduly influenced Floyd into making the inter vivos transfers.
We must first address whether we have jurisdiction over this appeal, specifically whether the July 25, 2013, order is sufficiently final to support appellate review.
“ ‘[Jjurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.’ Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987). Generally, an appeal will lie only from a final judgment, and if there is not a final judgment then this court is without jurisdiction to hear the appeal. Hamilton ex rel. Slate-Hamilton v. Connally, 959 So.2d 640, 642 (Ala.2006). A judgment is not final if it fails to completely adjudicate all issues between the parties. Giardina v. Giardina, 39 So.3d 204, 207 (Ala.Civ.App.2009) (citing Butler v. Phillips, 3 So.3d 922, 925 (Ala.Civ.App.2008)).”
Sexton v. Sexton, 42 So.3d at 1282. In Grantham v. Vanderzyl, 802 So.2d 1077 (Ala.2001), our supreme court stated:
“Damages are only one portion of a claim to vindicate a legal right, even though the damages claimed may consist of several elements. See [Haynes v. Alfa Fin. Corp., 730 So.2d 178] at 181 [ (Ala.1999) ]. An order is not final if it permits a party to return to court and prove more damages or if it leaves open the question of additional recovery. See Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380, 382 (Ala.1987).”
802 So.2d at 1080. “That a judgment is not final when the amount of damages has not been fixed by it is unquestionable.” *362 “Automatic” Sprinkler Corp. of America v. B.F. Goodrich Co., 351 So.2d 555, 557 (Ala.1977)
Because paragraph 10 of the July 25, 2013, order awards damages without fixing the amount of those damages, this court requested that the parties submit letter briefs concerning whether the order was final. Harley concedes in her letter brief that the trial court’s order might not be final because of the lack of a determination concerning the amount of damages. Ray and Dorothy contend that the order affirmatively established Harley’s liability for the funds that had been transferred and that it “merely left for further determination the manner in which the parties chose to satisfy the judgment.”
Upon declaring the inter vivos transfers of the funds in the BB & T, Allianz, and Merrill Lynch accounts void, and after ordering those funds to be returned to Floyd’s estate, the trial court purported to enter a judgment for the difference between the balance of the accounts at the time of the transfers and the current balance of the accounts. Those amounts, however, were not fixed or otherwise established with specificity. The trial court further granted Ray and Dorothy “leave to prove at a later date the exact amount of any such damages as may be necessary.” Because the amount of those damages was not proven, and because the trial court specifically granted Ray and Dorothy leave to return to court to prove those damages, the order is not final. Thus, our appellate jurisdiction has not been invoked, and we must dismiss the appeal.
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The case-action summary for case no. CV-12-41 contains no indication that the June 7 order was entered into the State Judicial Information System. See Rule 58(c), Ala. R. Civ. P. The June 7 order was entered only in case no. CV-11-900167. "Alabama law is well settled that consolidated actions maintain their separate identities, and separate judgments are to be entered in each action.” Casey v. Casey, 85 So.3d 435, 439 (Ala.Civ.App.2011) (citing H.J.T. v. State ex rel. M.S.M., 34 So.3d 1276, 1278 (Ala.Civ.App.2009)). However, because a final judgment has not been entered in case no. CV-12-41, that case remains pending in the trial court. Because neither party on appeal raises any issue arising out of case no. CV-12-41, the lack of a final judgment in that case does not impact this appeal.

. The trial court entered an order on August 12, 2012, consolidating case no. CV-12-55 with case no. CV-12-900167. In the order from which this appeal is taken, the trial court stated that case no. CV-12-900122 had been consolidated with case no. CV-12-55.

. In the order from which this appeal is taken, the trial court stated:
"The Amended Complaint was e-filed in this Court under Case No. CV-2011-55, but was later made subject to a Motion to Substitute filed on May 23, 2013, and granted by the Court, in which the Amended Complaint was deemed to have been filed in CV-2012-900122. Ms. Harley’s Answer to Amended Complaint was likewise filed in CV-2011-55 but, pursuant to such Order, deemed to have been filed in CV-2012-900122.”
The May 23, 2013, motion to substitute, along with the order granting that motion, pertained to a request by Ray and Dorothy to deem their summary-judgment motion that had been filed in case no. CV-12-55 as having been filed in the consolidated companion case, case no. CV-12-90012. See note 2, supra. The motion and the order do not reference the amended complaint filed on February 8, 2013. No party raises this issue on appeal. We note, however, that the trial court's order of November 26, 2012, in case no. CV-12-55 was not a final judgment be *358 cause it did not adjudicate Ray and Dorothy’s trespass claim.

. Before commencement of the trial, Ray and Dorothy filed a document containing the undisputed facts. Harley, through counsel, consented to the undisputed facts set out in that document, with the exception of the facts set out in paragraph 17. Before trial, however, the parties agreed to a revision of paragraph 17, and this opinion modifies that paragraph to summarize the parties’ agreement.

. At trial, Ray and Deborah did not present any evidence to support their claim alleging trespass. Thus, Ray and Deborah abandoned that claim. See Huntsville City Bd. of Educ. v. Frasier, 122 So.3d 193, 201 n. 16 (Ala.Civ. App.2013) (citing Hooks v. State, 21 So.3d 772 (Ala.Crim.App.2008))(noting that a party abandons a claim by failing to present evidence at trial in support of the claim).