DONALDSON, Judge.
Stephen M. Lund and Michael White appeal from a summary judgment entered by the Lauderdale Circuit Court (“the trial court”) in favor of William M. Owens d/b/a Tom Jones Insurance Agency (“Owens”). The judgment -disposed of White’s claims “in their entirety” on the basis that he is not a real party in interest, entered a summary judgment on the fraudulent-misrepresentation and fraudulent-suppression claims asserted by Lund and White, but did not dispose of all the claims asserted against all the parties in the case. The trial court certified the summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Because the claims disposed of in the judgment, and, thus, at issue in this appeal have essential issues in common with the claims still pending in the trial court, we dismiss the appeal as having been taken from a nonfinal judgment.

Facts and Procedural History

Because this appeal arises from a summary judgment in favor of Owens, the following summary of the facts is recited “in the light most favorable to the nonmov-ant[s,]” Lund and White. Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038 (Ala.2004).
Lund is the owner of a building in Florence (“the building”). Lund purchased the building for the purpose of permitting White to operate an antiques and consignment shop in the building. At the time Lund purchased the building, the roof of the building leaked. Lund and White received proposals to install a new roof, including a proposal from Michael Powell. Lund decided to hire Powell to install a new roof on the building. Although the document purportedly signifying the agreement between Lund and Powell was dated June 1, 2011, Lund claimed that his obligation to Powell was conditioned upon Powell’s providing proof that he had insurance coverage for the work to be performed. Powell told White and Lund to contact Owens for confirmation of Powell’s insurance coverage. White claimed that on or about July 1, 2011, he had a telephone conversation with Angie Kennemur, an employee of Owens. In that conversation, Kennemur purportedly responded to questions asked by White about Powell’s insurance coverage. Kennemur subsequently sent White a certificate of liability insurance dated July 11, 2011. The certificate indicated that Powell had general-commercial-liability insurance, subject to exclusions and conditions contained in the insurance policy.
Powell began work on the roof on or about July 8, 2011. Once installed, the new roof had leaks that purportedly caused damage to the roof and to the interior of the building, as well as to property located within the building. Powell never filed a claim with any insurance company seeking coverage. White filed a claim with the insurance company that provided coverage for Powell’s insurance policy (“the insurer”). The insurer denied coverage on several grounds, including that Powell’s policy covered only work on residential roofs and did not cover work on commercial buildings and that it did not cover defective workmanship or roofing work requiring the application of heat by, for example, using hot tar or torches (the type of roof allegedly installed by Powell).
On December 29, 2011, Lund and White filed a complaint in the trial court, asserting claims against, and seeking damages from Powell, the manufacturer of the roofing product installed by Powell (“the manufacturer”), and Owens. Lund and White alleged claims of negligence and breach of contract against Powell. Against the manufacturer, they asserted claims of a breach of express or implied warranties and claims under the Alabama Extended Man *693 ufacturer’s Liability Doctrine. Against Owens, they alleged claims of fraudulent misrepresentation and fraudulent suppression based on the responses allegedly given by Kennemur to White’s questions about Powell’s insurance coverage. Both Owens and Powell filed answers denying Lund and White’s claims. The manufacturer was later voluntarily dismissed from the action.
On December 14, 2012, Owens moved for a summary judgment, submitting in support of the motion excerpts from the depositions of White, Lund, and Kenne-mur; Kennemur’s notes; the certificate of liability insurance for Powell; and the denial-of-coverage letter from the insurer. Owens argued that Kennemur had made no false representations and that, as an insurance agency, Owens owed a duty to Powell as the insured or to the insurer but not to Lund and White as third parties. Owens argued that Lund and White could not have reasonably relied on any representations or omissions by Kennemur because Lund and White failed to inquire as to any exclusions or conditions contained in the policy issued to Powell despite having received a certificate of liability insurance indicating that Powell’s coverage was subject to such exclusions or conditions. Owens also argued that the document purportedly signifying the agreement between Lund and Powell was dated June 1, 2011, before Lund or White had contacted Owens, and that, therefore, Lund and White could not establish that any misrepresentations were a cause of any damage. Finally, Owens argued that White was not a real party in interest because he did not own any part of the building and that, therefore, summary judgment was appropriate as to the claims asserted by White. See Rule 17(a), Ala. R. Civ. P.
On February 25, 2013, Lund and White filed a response to Owens’s motion for a summary judgment, submitting in support of their response their own affidavits in opposition to the motion for a summary judgment, excerpts from Kennemur’s deposition, and other documents. In his affidavit, Lund testified that the document dated June 1, 2011, was only a proposal and that Powell’s hiring was contingent on Lund’s receiving proof of Powell’s insurance coverage. In his affidavit, White testified that, during a telephone call on or around July 1, 2011, Kennemur had responded to specific questions he had asked about Powell’s insurance coverage, and, further, White testified as to Lund’s and his reliance on Kennemur’s responses in choosing to hire Powell:
“After I got Ms. Kennemur on the phone, I told her that ‘we,’ meaning Stephen Lund and myself, had bought the old Moody Furniture building in Florence and told her that Mr. Powell had given us an estimate and a bid to install a Ruberoid roof on the building and that the roof was to be a flat roof. I asked her for verification that Mr. Powell was insured for construction defects, problems, work product and poor workmanship pertaining to that type of roof and method of installation. Angie Ken-nemur told me that Mr. Powell was covered for that type of work and to let him go ahead and begin working. She also asked me about my use of the term ‘we’ during our conversational I explained to her that Mr. Lund and myself were acquiring the building, renovating it and that I was putting in a consignment and retail business in the building. Ms. Kennemur at no time then or thereafter until after Mr. Powell had completed the job and we began experiencing problems with his work ever told us that Mr. Powell was insured only for residential roofing and not for the type of roofing system that he applied on our building.
*694 “My phone conversation with Ms. Kennemur to confirm Mr. Powell’s insurance coverage occurred prior to him being allowed to begin work and prior to our agreement to allow him to install the roof. In reliance on Ms. Kennemur’s representations regarding Mr. Powell’s insurance coverage and/or her failure to tell us that he was not covered for commercial roofing, Powell was allowed to begin work, materials were purchased and Powell was paid $900.00 on July 8 as a down payment toward his labor bill. Powell began work on the roof on July. 8, 2011, the date the materials were delivered to the job site. Ms. Kennemur sent me a Certificate of Insurance dated July 11, 2011, which I received sometime after that date and after Powell was allowed to begin working on the roof. “... Upon my inquiry to her, Ms. Kennemur undertook to confirm that Powell was insured, that his insurance covered the work and for Mr. Lund and myself to allow him to go ahead and proceed with installing the roof. Even though I told her the roof was to be installed on the old Moody’s Furniture building for a commercial enterprise, she at no time disclosed to me that Mr. Powell only maintained coverage for residential roofing and not commercial roofing. Even though I explained to her that the roof was a Ruberoid roof to be installed on a flat roof she did not disclose that his coverage did not cover that type of roof. Even though I explained to her that Mr. Lund and I wanted Mr. Powell to be covered for defects or problems associated with his workmanship and matters of that nature connected with the' installation of the roof, Ms. Kennemur at no time disclosed to me that his policy excluded workmanship and only covered damages related to workmanship. Had we known that Mr. Powell did not have coverage applicable to our enterprise, we would never have agreed to allow him to perform the roofing job and would have selected a roofing contractor who did possess the necessary coverage to reimburse us for our loss.”
Lund and White asserted that, when she allegedly chose to respond to White’s specific questions, Kennemur had a duty to speak truthfully without suppressing material facts. They argued that Kennemur breached that duty in the telephone conversation with White, and they asserted that Powell’s hiring on or about July 8, 2011, occurred in reliance on Kennemur’s alleged statements made before they received' the certificate of liability insurance dated July 11, 2011. Lund and White also claimed that the certificate of liability insurance did not place them on notice that Kennemur’s alleged representations were false. Lund and White sought to recover the amount of payment made to Powell under their agreement for the roofing work, the cost of materials purchased for the roofing work, and the amount resulting from the damage to the building and property from the leaking roof. Regarding White’s status as a real party in interest, Lund and White referred to testimonial evidence indicating that White claimed to own personal property in the building that was allegedly damaged as a result of leaks in the roof.
On September 6, 2013, the trial court entered a summary judgment in favor of Owens without specifying the grounds. On November 4, 2013, the trial court entered an order certifying the summary judgment as a final judgment pursuant to Rule 54(b). Negligence and breach-of-contract claims against Powell remain pending in the trial court. Lund and White filed a timely notice of appeal to the supreme court, and the supreme court transferred *695 the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Lund and White contend that they produced substantial evidence creating a genuine issue of material fact as to each element of their fraudulent-misrepresentation and fraudulent-suppression claims against Owens.

Discussion

Before addressing the merits of the parties’ arguments, we must first determine whether this court has jurisdiction to hear the appeal. “ ‘ “[JJurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.” ’ ” Harley v. Anderson, 167 So.3d 355, 361 (Ala.Civ.App.2014) (quoting Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala.Civ.App.2010), quoting in turn Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). “ ‘[A] final judgment is necessary to give jurisdiction to this court on an appeal.’ ” Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974) (quoting McGowin Inv. Co. v. Johnstone, 291 Ala. 714, 715, 287 So.2d 835, 836 (1973)). This court has the duty to dismiss an appeal that is not from a final judgment. Id.
“Ordinarily, an appeal can be brought only from a final judgment. Ala.Code 1975, § 12-22-2. If a case involves multiple claims or multiple parties, an order is generally not final unless it disposes of all claims as to all parties. Rule 54(b), Ala. R. Civ. P. However, when an action contains more than one claim for relief, Rule 54(b) allows the court to direct the entry of a final judgment as to one or more of the claims, if it makes the express determination that there is no just reason for delay.”
Grantham v. Vanderzyl, 802 So.2d 1077, 1079-80 (Ala.2001).
“Not every order has the requisite element of finality that can trigger the operation of Rule 54(b).” Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003) (citing Moss v. Williams, 747 So.2d 905 (Ala.Civ.App.1999)). “ [1] “Certifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.” ’ ” Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala.2004) (quoting State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002), quoting in turn Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994)).
“ ‘ “ ‘Appellate review in a piecemeal fashion is not favored.’ ” ’ ” Id. (quoting Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003), quoting in turn Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala.Civ.App.1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala.Civ.App.1996)).
“ ‘It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties.
“ ‘An appellate court also should not hear appeals that will require it to determine questions that remain before the trial court with regard to other claims.’ ”
Centennial Assocs., Ltd. v. Guthrie, 20 So.3d 1277, 1281 (Ala.2009) (quoting 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998)).
In Patterson v. Jai Maatadee, Inc., 131 So.3d 607 (Ala.2013), a trial court certified as final under Rule 54(b) a summary judgment in favor of some of the defendants in an action stemming from the plaintiffs fall through a grate. Our supreme court held that the trial court had exceeded its discre *696 tion in certifying the summary judgment pursuant to Rule 54(b) when at least some of the issues presented in the claims still pending in the trial court were the same as the issues presented in the claims addressed in the judgment on appeal and “ ‘[rjepeated appellate review of the same underlying facts would be a probability in [the] case.’ ” Id. at 611 (quoting Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So.3d 556, 562 (Ala.2009)). The issue whether the accident occurred on property controlled or owned by the defendants and the issue whether the grate was an open and obvious hazard were common to the pending claims as well as the claims disposed of in the summary judgment. Therefore, the pending claims and the claims disposed of in the summary judgment were “‘ “ ‘so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.’ ” ’ ” Patterson, 131 So.3d at 610 (quoting Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263 (Ala.2010), quoting in turn Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala.2006), quoting in turn other cases).
We note the lack of a dispositive issue presented in this appeal that is separate from the issues in the pending claims. Neither the trial court nor the parties have directed us to a basis for certifying the summary judgment as final pursuant to Rule 54(b), and the parties’ briefs lack any analysis regarding the propriety of certifying the summary judgment as a final judgment. Owens argues on appeal that it did not owe a duty to White and Lund because Owens was the insurance agent for Powell and that Kennemur was not required to respond to White’s inquiries. In contrast, however, White and Lund allege that Ken-nemur made misrepresentations and suppressed material information in response to direct inquiries by White in a telephone conversation that occurred before Powell was hired.[1] Owens’s arguments do not address whether Kennemur assumed a duty not otherwise owed. See Ex parte Dial Kennels of Alabama, Inc., 771 So.2d 419, 422 (Ala.1999) (“one who responds to an inquiry has a duty to speak the entire truth”). The parties’ other arguments appear to involve whether genuine issues of material fact exist regarding the contents of the conversation between White and Kennemur and whether Lund had entered into a binding contract with Powell before the conversation.
Some of the issues presented on appeal are the same as the issues that are pertinent to the pending claims against Powell. Lund and White argue that, because of Kennemur’s alleged misrepresentations and omissions regarding Powell’s insurance coverage, they hired Powell, which, they assert, led to the damage to the building and to the property within the building. Based on the parties’ arguments, the fraudulent-misrepresentation and fraudulent-suppression claims against Owens involve the issues whether the roof was defective, whether Powell was responsible for any defect, and whether any defect was caused by Powell’s poor workmanship or the type of roof installed — all issues that have not been determined and that did not form a basis for the summary-judgment *697 motion. Further, determining whether White is a real party in interest would require a review of the evidence regarding his alleged interest in the property allegedly damaged by Powell. Those common issues reflect that the claims disposed of in the summary judgment and at issue on appeal are therefore intertwined with the negligence and breach-of-contract claims still pending against Powell in the trial court.
Because the claims disposed of in the summary judgment and at issue on appeal involve issues common to, and are therefore “intertwined” with, the claims still pending in the trial court, we conclude that the trial court exceeded its discretion in certifying the summary judgment in favor of Owens as final pursuant to Rule 54(b). Accordingly, we dismiss the appeal as having been taken from a nonfinal judgment.
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. In her deposition, Kennemur indicated that, in her initial conversation with White on or about July I, 2011, she and White never discussed any roofing work in regard to Powell's insurance coverage. We note, however, that the trial court was not permitted to assess White's credibility regarding his testimony concerning the conversation with Kennemur when ruling on the motion for a summary judgment. “[A] court may not determine the credibility of witnesses on a motion for summary judgment.” McLeod v. McLeod, 78 So.3d 425, 427 (Ala.Civ.App.2011) (quoting Davis v. Sterne, Agee & Leach, Inc., 965 So.2d 1076, 1089 (Ala.2007), quoting in turn other cases) (internal quotation marks omitted).