PER CURIAM.
Kala Dollar (“the wife”)-appeals from a judgment entered by the Etowah Circuit Court that, among other things, dissolved the wife’s marriage to, Kevin Dollar (“the husband”), awarded the wife lump sums totaling $15,000 and periodic alimony of $1,000 per month payable for a period of 60 months, and awarded each party his or her own retirement plans.
The record reflects that the parties were married in 1995 and that they separated in November 2013; in that month, the wife, after having deleted the husband’s name from a jointly held savings account, physically blocked the husband from exiting the parties’ marital residence and prevented him from going to his workplace (ie., the offices of the Etowah County Commission), and the husband testified that the wife also had destroyed a cellular telephone provided to him by his employer and had come to the husband’s workplace and had acted in a belligerent manner such that the husband’s supervisor had caused her to be involuntarily committed to a mental-health facility. The wife then filed a complaint seeking a divorce from' the husband, after which the husband asserted a counterclaim seeking similar relief. The trial court, after a preliminary hearing, entered a pen-dente lite order in February 2014 awarding the wife temporary possession of the marital home, directing the husband to pay $500 as monthly periodic alimony to the wife, mutually restraining the parties from harassing or threatening each other, and setting a final hearing.[1]
*110 The trial court, after the final-hearing, entered a judgment divorcing the parties and awarding each party the financial and retirement accounts in their respective names and various items of personal property, notably including one motor vehicle each; the trial court also directed the husband to pay $5,000 to the wife as alimony in gross and $10,000 as a “property settlement,” mandated the sale of the marital home and an equal division of the proceeds therefrom, and awarded the wife $1,000 in monthly periodic alimony payable for 60 months and a $2,500 attorney fee. The husband filed a postjudgment motion' to alter, amend, or vacate the judgment and a contempt motion pertaining to alleged violations of the provisions of the pendente lite order mutually restraining the parties from harassing or threatening each other, and the wife also filed a postjudgment motion to alter, amend, or vacate the judgment; the trial court denied the post-judgment motions and entered a permanent restraining order in response to the postjudgmént contempt motion. The wife timely appealed.
The.wife’s brief on appeal asserts that the trial court acted outside its discretion in failing to award her “an equitable share” of the husband’s retirement accounts and in granting only a lump sum of $5,000 plus $1,000 per . month for 60 months as alimony awards. We note that, “[o]n appeal, issues of alimony and property division must be considered together, and the trial court’s judgment will not be disturbed absent a finding that it is unsupported by the evidence so as. to amount to an abuse of discretion.” Schado v. Schado, 648 So.2d 1169, 1170 (Ala.Civ.App.1994). Further, Schado indicates that “[t]he division of property in a divorce proceeding need not be equal, but must be equitable,” and that the factors “that the trial court should consider in dividing marital property' and setting alimony payments include ‘(1) the earning ability of the parties; (2) their probable future prospects; (3) their age, sex, health and station in life; (4) the duration of the marriage; and (5) the conduct of the parties with reference to the cause of divorce.’ ” Id. (quoting Echols v. Echols, 459 So.2d 910, 911-12 (Ala.Civ.App.1984)).
Under the judgment, the wife was awarded a total lump-sum payout of $15,000 (including the $10,000 “property settlement” and the $5,000 alimony-in-gross award), continuation medical-insurance coverage for three years, her own retirement account (which was shown to be worth approximately $34,000), her own financial accounts (which were worth approximately $29,000 but which may have included certain funds; that could have been classified as the wife’s separate estate), one-half of the net proceeds from the sale of the marital home (as to which the parties jointly paid $59,000 toward its acquisition in 2012) after payment of closing costs and the “property settlement,” and a motor vehicle valued at ■ approximately $8,000. The husband, in contrast, was awarded his own financial accounts worth approximately $19,500, one-half the proceeds from the' sale of the marital home after deduction of closing costs and the $10,000 “property settlement,” a motor vehicle worth approximately $4,100, and re *111 tirement accounts worth approximately $45,000.
With respect to the wife’s one-sentence argument, unsupported by authority, that the trial court erred in failing to “equally split the [husband’s] retirement' benefits between the parties,” she fails to acknowledge that,' although “[a] trial court may ... consider retirement accounts in making its determinations regarding alimony and the division of property!,] there is no requirement that retirement accounts be divided.” Ex parte Yost, 775 So.2d.794, 795 (Ala.2000) (emphasis added). In this case, the wife has a retirement account that is worth $84,000 compared .to the husband’s retirement accounts worth approximately $45,000; moreover, she was awarded, among other things, a $10,000 “property settlement” as the first-priority distribution from the sale of the marital residence, an amount that closely matches the difference between the two parties’ retirement assets. Further, the wife’s bare contention in her appellate brief as to alimony in gross that the husband was purportedly “capable” of paying more than $5,000 offers no rationale why the trial court’s award of that amount would be inequitable in this case. We thus cannot conclude under - the circumstances that the trial court acted outside its discretion in failing to allocate part of the husband’s retirement benefits' to the wife as a' component of its judgment or in awarding more than $5,000 as alimony in gross to the wife.
 More developed in the wife’s brief is her argument regarding the claimed inequity in the trial court’s award of $1,000 as periodic alimony for a period of 60 months. ’ With regard to periodic alimony, this court has stated:
“A divorcing spouse is not automatically entitled to periodic alimony, but the decision whether to award periodic alimony rests in the sound judicial discretion of the trial court.
“In exercising its discretion, the trial court is guided by equitable considerations. This court and our supreme court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, which include: the length of the marriage; the standard of living to which the parties became accustomed during-the marriage; the relative fault of the parties for the breakdown of the marriage; the age and health of the • parties; ■ and ■ the future employment prospects- of the parties. In weighing those factors, a trial court essentially determines whether the petitioning spouse has' demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet.”
Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010) (citations omitted); see also Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994) (in which this court opined that “[t]he failure to award alimony, although discretionary,- is arbitrary and capricious when the needs of the [petitioning spouse] are shown to merit an award and the [responding spouse] has the ability to-pay”).
The testimony was undisputed that the wife had not been employed since 2011 because she is disabled. The wife testified that she has a disorder called “cervical and focal dystonia,” for which there is no cure and which will continue to worsen as it progresses; further, she receives Social Security disability income in the amount of $1,100 to $1,200 per month, which amount does not meet her needs. The wife presented evidence indicating that her monthly expenses, excluding $101 a month for *112 her cellular-telephone expenses and an amount for housing expenses, total $1,944. The wife testified that her disability prevents her from working and that she cannot vacuum, mop, clean the baseboards in the marital home, or perform yard work.
The husband, for his part, testified that he earns approximately $1,000 per week from his employment in county government as a deputy administrator and chief financial officer and that, pursuant to his employment contract, he will receive a raise of three percent each fiscal year. The husband also testified that his expenses are approximately $3,500 to $3,800 per month; however, when questioned further, he admitted that his expenses actually total only approximately $1,792 per month. Moreover, the husband testified that those expenses included the wife’s cellular-telephone bill of $101 per month and $865 for mortgage payments on the marital home. The record reveals, however, that the wife was ordered to transfer her cellular-telephone service into her own name and that the marital home was to be sold; additionally, the husband testified that he intended to rent a place to live for $500 per month.
In the present case, the husband agreed that the wife is disabled; although he testified that the wife had helped paint their previous marital home, that event had occurred years before the trial. The husband testified that, over the course of six years, the wife had driven approximately 70,000 miles in her vehicle; however, there was no indication of how often the wife had driven in the year leading up to the trial. Even more notably, there is no testimony in the present case indicating that the wife is capable of working, and there was no finding by the trial court that could lead to such a determination, nor any finding that either party was culpable in the breakdown of the marital relationship. Based on the evidence, we conclude that the wife showed a need for periodic alimony that is not likely to abate in the future, that, the husband’s ability to pay periodic alimony is clear from the testimony presented, and that no equitable considerations would counsel in favor of the time limitation imposed upon the trial court’s periodic-alimony award.
In Kluever v. Kluever, 656 So.2d 887 (Ala.Civ.App.1995), this court reversed a judgment divorcing the parties to the extent that it had limited the award of periodic alimony to the wife to 18 months. This court stated, in pertinent part:
“There is no evidence to support the trial court’s limitation of the wife’s periodic alimony to 18 months. It does not appear that the wife’s financial circumstances will improve at that time, and there is nothing to indicate that the husband’s income will decrease, or that his expenses will increase, at that time. Furthermore, that limitation allows an exact computation and makes the award more like a property division than a periodic alimony award designed to support the dependent wife.”
656 So.2d at 890. Like in Kluever, there is no evidence in the present case to support the trial court’s limitation of the periodic-alimony award to a period of 60 months. There is nothing to indicate that the wife’s financial circumstances will improve at that time, and, indeed, the testimony indicates that the husband’s ability to pay will increase. Because the record indicates that the wife has a need for periodic alimony and that the husband has the ability to pay, we reverse the trial court’s judgment limiting the award of periodic alimony to a 60-month period; on remand, that temporal limitation is to be deleted.[2] The wife’s *113 request in her brief for an award of an attorney fee on appeal is granted in the amount of $2,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
PITTMAN, J., concurs in part and dissents in part, with writing, which DONALDSON, J., joins.

. A contempt motion was filed by the husband asserting violations of the pendente lite order pertaining to matters involving the sale of the marital residence and the wife’s duty to obtain cellular-telephone service; however, although the trial court ordered that the motion be heard at the final hearing, the husband did not adduce evidence supporting his contempt claim at that time. Thus, the husband abandoned that claim. See Harley v. Anderson, 167 So.3d 355, 360 n. 5 (Ala.Civ.App.2014).

. In light of our reversal, and in recognition of the principle that awards of periodic alimo *113 ny and the division of marital property are matters to be considered together, see Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003), we note that' the trial court, on remand, will have the discretion to revisit other aspects of its alimony and property awards previously in force.